106 F.3d 411
 79 A.F.T.R.2d 97-773, 97-1 USTC P 50,204
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Arlene WALTERS, Petitioner-Appellant,
v.
COMMISSIONER OF INTERNAL REVENUE SERVICE, Respondent-Appellee.
 No. 95-70308.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 4, 1996.
Decided Jan. 14, 1997.
 
 Before: GOODWIN, WIGGINS, and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The IRS assessed a $4,386 deficiency against Arlene Walters for the 1989 taxable year because she claimed just $10,000 of the $48,000 spousal support she received from her ex-husband. She petitioned the tax court for a redetermination of this deficiency, arguing the applicable statute required her to report only $10,000 of the amount she received. The tax court rejected her arguments and upheld the IRS's determination. We have jurisdiction under 26 U.S.C. § 7482(a)(1) and we affirm.
 
 
 3
 We review de novo the tax court's conclusions of law. Kelley v. Commissioner, 45 F.3d 348, 350 (9th Cir.1995). "[I]n general, no special deference should be given the tax court when reviewing a pure question of law." Pacific First Fed. Sav. Bank v. Commissioner, 961 F.2d 800, 803 (9th Cir.) ("Pacific First "), cert. denied, 506 U.S. 873 (1992).
 
 
 4
 The Deficit Reduction Act of 1984 ("DEFRA") modified the Internal Revenue Code's treatment of alimony payments in order to serve two purposes. First, Congress wanted to create a uniform definition of alimony to eliminate the confusion created by the laws of different states. H.R.Rep. No. 432, 98th Cong., 2d Sess. 1495 (1984), reprinted in 1984 U.S.C.C.A.N. 697, 1137. Second, Congress wanted to prevent taxpayers from abusing the tax structure by improperly labelling non-deductible property settlements as deductible alimony. Id.
 
 
 5
 DEFRA added two rules to prevent taxpayers from disguising property settlements as alimony payments. First, DEFRA added the "minimum term rule," subjecting payments of more than $10,000 to a six-year minimum in order to obtain alimony treatment. This rule was codified in Section 71(f)(1) of the Code as follows:
 
 
 6
 (f) SPECIAL RULES TO PREVENT EXCESS FRONT-LOADING OF ALIMONY PAYMENTS.
 
 
 7
 (1) Requirement that payments be for more than 6 years. Alimony or separate maintenance payments (in excess of $10,000 during any calendar year) paid by the payor spouse to the payee spouse shall not be treated as alimony or separate maintenance payments unless such payments are to be made by the payor spouse to the payee spouse in each of the 6 post-separation years (not taking into account any termination contingent on the death of either spouse or the remarriage of the payee spouse).
 
 
 8
 Deficit Reduction Act of 1984, Pub.L. No. 98-369, § 422(a), 98 Stat. 494, 796 (1984). This provision applied to divorce or separation instruments executed after December 31, 1984. Id. § 422(e)(1), 98 Stat. at 798. DEFRA also added a "recapture" rule, codified as Section 71(f)(2)-(5), which provided for retrospective treatment of payments if the alimony amount decreased excessively.
 
 
 9
 The Tax Reform Act of 1986 ("TRA") eliminated the minimum term rule of Section 71(f)(1) and re-wrote the recapture rule (which now begins as Section 71(f)(1)). See Tax Reform Act of 1986, Pub.L. No. 99-514, § 1843(c)(1), 100 Stat. 2085, 2853 (1986). Nevertheless, DEFRA's version of Section 71(f)(1) remains applicable to divorce instruments executed between January 1, 1985 and January 1, 1987, unless subsequent modifications to the instrument adopted the new provisions. See id. § 1843(c)(2)(B), 100 Stat. at 2855.
 
 
 10
 In this case, the underlying divorce judgment was executed on October 8, 1985. Although the judgment was subsequently modified by court order in 1992, the modification order did not adopt the new provisions enacted by TRA. Therefore, DEFRA's minimum term rule governs the tax treatment of the alimony payments Walters receives from her ex-husband.
 
 
 11
 In 1984, the Treasury Department promulgated temporary regulations governing the minimum term rule. These regulations described the operation of the minimum term rule as follows:
 
 
 12
 To the extent payments are made in excess of $10,000, a payment will qualify as an alimony or separate maintenance payment only if alimony or separate maintenance payments are to be made in each of the 6 post-separation years.... For purposes of determining whether alimony or separate maintenance payments are to be made in any year, the possible termination of such payments upon the happening of a contingency (other than the passage of time) which has not yet occurred is ignored (unless such contingency may cause all or a portion of the payment to be treated as a child support payment).
 
 
 13
 Temp.Treas.Reg. § 1.71-1T(d) (A-23) (1984) (emphasis added).
 
 
 14
 "The role of the judiciary in cases of this sort begins and ends with assuring that the Commissioner's regulations fall within his authority to implement the congressional mandate in some reasonable manner." United States v. Correll, 389 U.S. 299, 307 (1967). In order to determine whether a regulation is consistent with the congressional mandate, "we look to see whether the regulation harmonizes with the plain language of the statute, its origin, and its purpose." Pacific First, 961 F.2d at 803-04 (quoting National Muffler Dealers Ass'n v. United States, 440 U.S. 472, 477 (1979)).
 
 
 15
 The interpretation of DEFRA's Section 71(f)(1) adopted by the government and set forth in Temporary Regulation § 1.71-1T(d) (A-23) harmonizes with the plain language of the statute. The phrase "unless such payments are to be made" does not necessarily mandate the prospective analysis Walters suggests. The year-to-year analysis adopted by the government's interpretation and the temporary treasury regulation is a "reasonable interpretation" of the statute's language under the test adopted by Pacific First, 961 F.2d at 804.
 
 
 16
 The government's interpretation of DEFRA's Section 71(f)(1) also harmonizes with the purposes of the legislative enactment. Congress enacted the alimony provisions of DEFRA in order to create uniformity among the various states with respect to tax treatment of alimony payments. Walter's statutory interpretation would defeat that Congressional purpose because different states have different laws regarding state court authority over modification to an alimony agreement.
 
 
 17
 Additionally, Congress had a specific purpose in enacting DEFRA's short-lived minimum term rule: like the recapture rule, the minimum term rule was intended to prevent taxpayers from disguising non-deductible property settlements as deductible alimony. The government's interpretation of Section 71(f)(1) and the corresponding temporary treasury regulation are entirely consistent with that purpose. The government's interpretation upholds the deductibility of a legitimate alimony payment like those made by Walter's ex-husband while retaining the effectiveness to treat properly a disguised property settlement.
 
 
 18
 Therefore, we conclude that the tax court did not err when it concluded that the government's interpretation of Section 71(f) was valid and that Temporary Treasury Regulation § 1.71-1T(d) (A-23) was a reasonable regulation. The judgment of the tax court is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited or by the courts of this circuit except as provided by 9th Cir.R. 36-3