106 F.3d 411
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America for the use and benefit of Grinnell
Corporation, Plaintiff-Appellee,
v.
DNI, INC., a Hawaii corporation; Island Insurance Company,
Ltd., a Hawaii corporation, Defendants-Appellants.
UNITED STATES of America for the use and benefit of Grinnell
Corporation, Plaintiff-Appellant,
v.
DNI, INC., a Hawaii corporation; Island Insurance Company,
Ltd., a Hawaii corporation, surety, Defendants-Appellees.
 Nos. 95-16514, 95-17013.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 12, 1996.
Decided Jan. 22, 1997.
 
 MEMORANDUM*
 Before: FLETCHER, WIGGINS, and T.G. NELSON, Circuit Judges.
 
 
 1
 The district court granted summary judgment in favor of Grinnell Corporation in this contract dispute, awarding Grinnell $60,929.00 plus prejudgment interest for unpaid sums arising out the installation of a fire sprinkler system on a United States military base. The district court also awarded Grinnell attorney's fees in the amount of $18,910.37. DNI, Inc. and Island Insurance Company, Ltd. ("DNI") appeal, contending that the district court's order granting summary judgment was erroneous. Grinnell cross-appeals, arguing that the district court incorrectly decided its claim for attorney's fees. We affirm the district court's judgment in its entirety.
 
 I.
 
 2
 DNI contends that Grinnell's complaint was untimely under the Miller Act's one-year statute of limitations, 40 U.S.C. § 270b. To analyze whether a suit is timely under the Miller Act, "the test to be applied is whether the work was performed and the material supplied as part of the original contract or for the purposes of correcting defects, or making repairs following inspection of the project." United States ex rel. Austin v. Western Elec. Co., 337 F.2d 568, 572-73 (9th Cir.1964) (internal quotations omitted).
 
 
 3
 Grinnell filed its complaint on December 21, 1993. Accordingly, Grinnell's complaint is time-barred unless work was performed or material was supplied on or after December 21, 1992. The district court concluded that work was performed on December 23, 1992, when a Grinnell technician attended a final inspection of the sprinkler system. During the inspection, the system was "put into service" and turned over to the Navy.[1]
 
 
 4
 The Grinnell-DNI subcontract obligated Grinnell to perform certain duties delineated in DNI's contract with the Navy. The Navy-DNI contract required "the system installer" to provide "an experienced technician" during the final inspection of the sprinkler system. Thus, Grinnell's work performed on December 23, 1993 was part of its contract with DNI. Therefore, we conclude that Grinnell's Miller Act complaint was timely filed.
 
 II.
 
 5
 DNI and Grinnell dispute whether the contract required Grinnell to replace the overhead main piping in the cold storage warehouse. Applying Hawaii law, the district court concluded that the terms of the contract were ambiguous on this issue and construed this ambiguity against DNI as the drafter of the subcontract between Grinnell and DNI. DNI contends the district court's analysis was erroneous, presenting four separate sub-issues: (1) whether Hawaii law should be used to interpret the contract; (2) whether the contract was in fact ambiguous; (3) whether the district court correctly interpreted the ambiguous contract against DNI; and (4) whether Grinnell's failure to show pre-bid reliance on the contract's ambiguity prevents it from recovering on its claim.
 
 A.
 
 6
 State rather than federal substantive law applies in Miller Act cases to which the United States is not a party, i.e., disputes between the prime contractor and a subcontractor. E.g. United States ex rel. Union Bldg. Materials Corp. v. Haas & Haynie Corp., 577 F.2d 568, 571 n. 1 (9th Cir.1978). This contract was signed by two Hawaii corporations in Hawaii. Accordingly, the district court correctly applied Hawaii law to the interpretation of the contract.
 
 B.
 
 7
 We agree with the district court that the contract was ambiguous as to whether Grinnell was required to replace the overhead main piping. The Navy's specifications required the contractor to "[r]emove all components of existing preaction in-rack sprinkler systems located in the Dairy, Fruit, and Vegetable Coolers and Freezer." Neither the Navy-DNI contract nor the DNI-Grinnell subcontract contain any provision specifying what is meant by the term "in-rack sprinkler system." Rather, the DNI-Grinnell subcontract seems to distinguish between piping "in-rack" and piping "overhead."
 
 
 8
 DNI's efforts to rely on extra-contractual sources to clarify the contract's terms are unavailing. DNI relies on an industry-wide standard defining "sprinkler system" and the underlying purpose of the warehouse project. We find neither persuasive. The industry standard does not help us determine what is meant by the term "in-rack sprinkler system." Nor does the purpose of the project help us determine what is meant by this language.
 
 C.
 
 9
 Under Hawaii law, an ambiguous contract should be construed against the party who prepared the contract. E.g., Arakawa v. Limco, Ltd., 587 P.2d 1216, 1219 (Haw.1978); Union Building Materials Corp., 577 F.2d at 574. DNI prepared the DNI-Grinnell subcontract incorporating the terms of the Navy-DNI contract. Accordingly, we conclude the district court properly interpreted the ambiguity in the contracts against DNI.
 
 D.
 
 10
 DNI argues that Grinnell had a duty to inquire about ambiguities in the subcontract and that Grinnell's failure to satisfy that duty prevents Grinnell from recovering. First, DNI argues that the ambiguity in the contract was a "patent ambiguity." This argument can be quickly rejected. The contract's terms are not patently ambiguous. Only after DNI took the position that replacement of the overhead piping was necessary did a latent ambiguity become apparent.
 
 
 11
 Where a latent ambiguity is present, federal procurement law establishes that a prime contractor has the obligation to show that it relied upon its interpretation of the ambiguity in the submission of its bid. See, e.g., Edward R. Marden Corp. v. United States, 803 F.2d 701, 705 (Fed.Cir.1986). DNI argues that Section 11.1.1 of the DNI-Grinnell subcontract places all of its obligations and responsibilities vis-a-vis the Navy on Grinnell. Accordingly, DNI argues that Grinnell has the obligation of showing that it relied upon its interpretation of the ambiguity in the submission of its bid.
 
 
 12
 Without reaching the validity of DNI's argument based on federal rather than state law, DNI's premise that Grinnell failed to show pre-bid reliance can be rejected. The testimony of Grinnell employee John Anspach established that Grinnell did not intend to replace the overhead main piping when it executed the contract. Accordingly, even if Grinnell had the burden of showing that it relied on its interpretation of the contract, Grinnell has satisfied that burden.
 
 
 13
 Thus, having rejected all of DNI's arguments, we conclude that the district court correctly found that the DNI-Grinnell contract was ambiguous and should be construed in Grinnell's favor. Accordingly, we affirm the portion of the district court's judgment finding DNI liable to Grinnell for the extra work performed in replacing the overhead main piping.
 
 III.
 
 14
 DNI maintains that the terms of the subcontract required Grinnell to submit its claims to the Navy. DNI misconstrues the nature of the underlying dispute. The evidence establishes that the dispute was over whether Grinnell was required to replace the main overhead piping at all. When Grinnell and DNI initially disagreed on this issue, DNI asked the Navy, framing the question in terms of whether "new versus used" piping had to be installed. Relying on the general terms of the contract requiring new materials to be used throughout the project, the Navy told DNI that new piping was required. But DNI didn't ask the key question--whether the contract required replacement of the overhead piping--until Grinnell had already completed the unnecessary work.
 
 
 15
 When the dispute is properly framed, it is clear that any dispute was between DNI and Grinnell, not the contractors and the Navy. Thus, we conclude that the district court correctly found that this was a dispute between the prime contractor (DNI) and the subcontractor (Grinnell). As a result, the terms of the contract did not require Grinnell to submit a claim to the Navy before filing this lawsuit.
 
 IV.
 A.
 
 16
 Grinnell argues that its entitlement to attorney's fees should not be limited by Hawaii Rev.Stat. 607-14(a). In Miller Act cases, "[f]ees are available only when authorized by statute or an enforceable contract or, in the absence of either of these sources, when the losing party has acted in bad faith or the successful party has conferred a substantial benefit on a class of individuals." United States ex rel. Reed v. Callahan, 884 F.2d 1180, 1185 (9th Cir.1989) (citing F.D. Rich Co. v. United States ex rel. Industrial Lumber Co., 417 U.S. 116, 126, 129-30 (1974)).
 
 
 17
 Here, the Grinnell-DNI subcontract provides for an award of attorney's fees. State law applies to the interpretation of the subcontract because the United States is not a party. Id. at 1185. Thus, the district court was correct to apply Section 607-14(a) to Grinnell's claim for attorney's fees.
 
 B.
 
 18
 Grinnell also contends the district court applied Section 607-14(a) incorrectly, failing to take into account Grinnell's success on DNI's counterclaims when calculating the statutory limit. The district court issued two orders on this subject, granting in part Grinnell's motion for an award of attorney's fees and then denying Grinnell's motion for reconsideration. Reading both together, we conclude that the district court found that Grinnell had failed to establish any reasonable attorney's fees expended solely in defense of the counterclaim. Thus, we hold that the district court correctly applied section 607-14(a) to Grinnell's request for attorney's fees.
 
 V.
 
 19
 The district court also denied Grinnell's attempt to recover international travel expenses of $3,144.00 incurred by one of its witnesses. The district court held that Grinnell's failure to include this amount in its bill of costs submitted to the clerk under Fed.R.Civ.P. 54(d)(1) precluded it from recovery. We cannot conclude that the district court abused its discretion.
 
 
 20
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In its reply brief, DNI argues for the first time that there is no competent evidence to support the district court's finding that a Grinnell employee inspected the sprinkler system on December 23, 1992. Because DNI did not raise this issue in its opening brief, we refuse to consider it. See In re Pacific Enters. Sec. Litig., 47 F.3d 373, 379 n. 6 (9th Cir.1995)